Ray J. BERAN, Appellant,

v.

UNITED STATES of America, Appellee.

Andrew M. KAMINSKI, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 77–1843, 77–1872.

United States Court of Appeals,
Eighth Circuit.

Submitted March 14, 1978.

Decided July 24, 1978.

Rehearings and Rehearings En Banc
Denied Aug. 29, 1978.

Richard J. Bruckner, Omaha, Neb., argued, for appellants and on brief, for appellant Beran in No. 77–1843.

Leo W. Kennedy, Lakewood, Colo., on brief, for appellant Kaminski in No. 77–1872.

Lynn E. Crooks, Asst. U. S. Atty., Fargo, N. D. (argued), and James R. Britton, U. S. Atty., Fargo, N. D., on brief, for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, HENLEY, Circuit Judge, and LARSON, Senior District Judge.*

LARSON, Senior District Judge.

Ray J. Beran and Andrew M. Kaminski were convicted of several counts of misapplication of bank funds. The convictions were affirmed on appeal, *United States v. Beran*, 546 F.2d 1316 (8th Cir. 1977). Petitioners filed applications for relief under 28 U.S.C. § 2255 alleging that their retained counsel's assistance at trial was ineffective. The district court denied the motions after an evidentiary hearing and these appeals followed. The details pertaining to the case are set out in our previous opinion; it is sufficient to note here that petitioners were charged individually or together with twelve counts of misapplying bank funds. A judgment of acquittal on Count I, on which both were charged, was entered at the close of the government's case and the remaining counts went to the jury. The jury acquitted each defendant on some counts and convicted on others. Both were fined and placed on probation.

█ The standard for determining the adequacy of counsel in this context is whether the defense attorney "exercise[d] the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *United States v. Easter*, 539 F.2d 663, 666 (8th Cir. 1976). The evaluation is a two step process: "first, determining . . . whether there has been a failure to perform some duty . . . owed by a defense attorney to his client; and second, determining . . . whether that failure prejudiced his defense." *McQueen v. Swenson*, 498 F.2d 207, 218 (8th Cir. 1974). We will examine each of the claimed instances of ineffective assistance separately.

█ Petitioners were jointly represented by one attorney and they now claim this joint representation was impermissible. Waiver of the right to separate counsel is not at issue, for petitioners were not informed of that right or of the potential for conflicts of interest inherent in dual representation. *See United States v. Lawriw*, 568 F.2d 98 (8th Cir. 1977). In this circuit, however, joint representation is not a per se constitutional violation, *United States v. Lawriw, supra* at 103; the question is whether an actual conflict of interests or a substantial possibility of conflict existed, *United States v. Valenzuela*, 521 F.2d 414, 416 (8th Cir. 1975). While we have suggested that the evidence of such conflict need only be "minimal," on this record we cannot say that even a minimal showing has been made. Petitioners have not pointed to a single instance before, during, or after trial when they were in positions adverse to one another. Both denied their guilt and neither fixed any blame on the other. Both testified and their testimony was similar and consistent. Their theories of defense were the same. No suggestion has been made that any other, perhaps incompatible, defenses existed or that any witnesses possessed information harmful to one and helpful to the other, so that counsel's examinations were hampered by divided loyalties. The specific point petitioners advance as evidencing a conflict is that the charges against Kaminski were more serious than those against Beran. Although there was a difference in the dollar amount each defendant was charged with misapplying and in the amounts repaid, we see no great disparity in the "gravity" of the wrongdoings involved. Moreover, even assuming the disparity was significant, petitioners have not suggested how that could affect or did affect counsel's trial tactics. In short, this case is unusually free of any indicia of divergent interests of the two petitioners and we find the argument without merit.

█ In a related vein, the petitioners argue that at least their counsel should have requested a severance of the two petitioners before trial to avoid potential prejudice to one by the admission of evidence

---

* The Honorable Earl R. Larson, United States Senior District Judge, District of Minnesota, sitting by designation.

relevant only to charges against the other. But the petitioners were properly joined in the first instance and mere quantitative inequality in the evidence presented is not grounds for severance. *United States v. Jackson*, 549 F.2d 517, 526 (8th Cir. 1977). The evidence was easily compartmentalized as to each petitioner and the likelihood of confusion slight. The verdicts demonstrate that the jury considered each defendant separately. We do not view failure to more for a severance under these circumstances as a breach of the attorney's duty and, in any event, find no prejudice resulted from the joint trial.

■ Defendants also assert that counsel failed adequately to prepare for trial. He apparently did not interview government witnesses or witnesses suggested by his clients. The only witnesses he had contact with were character witnesses presented on defendants' behalf whom he interviewed just before they took the stand. We note, however, that counsel had full access to government files and numerous contacts with the United States Attorney's Office. He and his clients spent several days examining the government's evidence. Counsel effectively cross-examined government witnesses and succeeded in getting the most complex and serious of the charges dismissed. But assuming that the lack of further investigation here was a breach of duty, petitioners must still show that some prejudice flowed from the breach. They must demonstrate "the existence of admissible evidence which could have been uncovered by reasonable investigation and which would have proved helpful to the defendant either on cross-examination or in his case-in-chief at the original trial." *McQueen v. Swenson, supra* at 220. With regard to government witnesses, defendants assert they would have liked to have interviewed them and "refresh their memories" and get

them to "tell the truth." They have not indicated in what respect the government's witnesses' memories were faulty or how their testimony was less than truthful. Similarly, petitioners have mentioned the names of several people who could have testified to various counts and have stated that in their opinion the testimony would have been "beneficial." They have not, however, indicated what the testimony would have been, how it could have been used, or what specific facts could have been elicited. Presented only with petitioners' conclusory assertions and lacking any clue as to what evidence would have been discovered had counsel investigated more diligently, we can only conclude that the burden of showing prejudice has not been met.[1]

■ Petitioners complain of their counsel's failure to move for a severance of the counts or a mistrial after the acquittal on Count I was entered or for a new trial after the verdicts were in. The principal ground for these motions would have been that the evidence on Count I was so prejudicial that the jury could not disregard it in their deliberations on the other counts even though instructed to do so. This same question of prejudice was raised on direct appeal. *United States v. Beran, supra.* Decisions to make motions such as these are a matter of trial tactics and strategy and will not generally be second guessed by a reviewing court. Plausible strategic reasons existed for bypassing the motions for severance or a mistrial. Some of the Count I evidence would have been admissible in a separate trial on the remaining counts and counsel could reasonably have concluded that it was better to continue with the case, which was almost at a close, than to begin the trial again with a new jury. Indeed, trial counsel deliberately used the "disappearance" of Count I in his final argument to convince the jury that accusations do not necessarily indicate guilt or wrongdoing.

---

1. Petitioners asserted various other claims related to preparation and investigation by defense counsel. We see no need to discuss these claims in much detail. Both assert they were not kept well informed and that they do not feel their attorney had sufficient grasp of the law and the facts of the case beforehand. The record shows, however, that defense counsel and both defendants discussed the case after each day's session. There is ample evidence that counsel did not try the case "cold," as the transcript reveals a thorough knowledge of both the law and the facts related to the charges.

The failure to move for a new trial, on the other hand, was simply negligent. Counsel began making notes for the motion immediately after the verdicts came in and then abandoned the effort in favor of a personal vacation. He did not contact his clients again until the time for filing the motion had passed. Although we view this conduct as a clear breach of duty, we must nevertheless determine whether any actual prejudice resulted from the breach. Since counsel had bypassed motions for severance or a mistrial after Count I was dismissed, he would have had to argue the new trial motion, based on the same ground, under the plain error doctrine. The trial court would then have been in the same position as the court was on direct appeal and would have had to determine whether failing to declare a mistrial *sua sponte* after the acquittal on Count I was plain error. *See United States v. Beran, supra.* This issue was decided on direct appeal—continuing the trial after Count I was removed from the case was not erroneous. Thus, although counsel's breach resulted in defendants' being deprived of an opportunity to present a motion to the court, the likelihood of success of the motion was remote, and we conclude that no actual prejudice resulted from the failure.

Defendants have also presented evidence that their attorney consumed alcoholic beverages in what they considered to be excessive amounts during the course of the trial. Defendants did not complain of this conduct to anyone during the trial, nor did they terminate their attorney's services on the direct appeal, long after they had discovered the habits of which they now complain. Defendants stated that counsel was not intoxicated, but they believe that he may not have functioned to his "fullest capabilities." We do not find that defendants' specific claims substantiate this charge. We have found only one instance in which a breach of duty occurred—the failure to move for a new trial—which could be construed as related to alcohol abuse, although even that is far from clear. And in that instance we have found no prejudice. As to whether counsel was af-fected by excessive alcohol consumption during trial, we have found no indication thereof in our examination of the trial record or of defendants' specific claims and, more importantly, the trial judge who presided over the long proceedings and was in the best position to assess such a claim, ruled against petitioners on this issue. In short, we find that defendants have failed to show both a breach of duty and prejudice on this ground, as well as on the other claims discussed.

The judgment of the district court is affirmed.