COURT OF APPEALS OF VIRGINIA

Present: Judges Willis, Elder and Annunziata
Argued at Richmond, Virginia


MAYS WILSON TATE, JR.

MEMORANDUM OPINION* BY
v.    Record No. 3017-97-2          JUDGE JERE M. H. WILLIS, JR.
                                          MARCH 30, 1999
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BUCKINGHAM COUNTY
Timothy J. Hauler, Judge

Michael J. Brickhill (Michael J. Brickhill,
P.C., on brief), for appellant.

Leah A. Darron, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


On appeal from his conviction for three counts of second-degree murder, in violation of Code § 18.2-32; one count of breaking and entering, in violation of Code § 18.2-91; and one count of grand larceny, in violation of Code § 18.2-95, Mays Wilson Tate, Jr., contends that the trial court erred in striking his testimony. We disagree and affirm the judgment of the trial court.

"On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences deducible therefrom." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

---

*Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication.

On May 31, 1992, police were called to the home of Roberta Stinson, where they found the bodies of Clarence Stinson, Gloria Stinson, and Roberta Stinson, all three of whom had been shot to death.  Tate, Clarence Stinson's grandson by marriage, was arrested and charged with the murders.  Tate's first trial resulted in a conviction, which was reversed on appeal.  His first retrial resulted in a mistrial.  The present appeal arises out of his second retrial.  Upon motion in limine, the trial court ruled that in the presentation of evidence, no mention should be made of the prior two trials.

At trial, Tate elected to testify.  Before allowing him to take the stand, the trial court informed him that by testifying, he would subject himself to cross-examination by the Commonwealth's Attorney.  Tate acknowledged that he understood this.  He proceeded to testify that he was innocent, that he had twice before been put on trial, and that this third trial was simply harassment on the part of the Commonwealth.

Upon concluding his direct testimony, Tate stated that he would testify no further.  Being told by his attorney that the Commonwealth's Attorney would cross-examine him, Tate replied that the Commonwealth's Attorney could "cross-examine all he wants."  The trial court asked the Commonwealth's Attorney whether he wished to cross-examine Tate.  The Commonwealth's Attorney replied that he would like a few minutes to think about

it and then added that he "might not need . . . to ask" Tate any questions.  The trial court sent the jury from the courtroom and took a recess.

During the recess, the trial court warned Tate repeatedly that it would strike his testimony if he refused to submit to cross-examination.  It directed defense counsel to advise Tate of this consequence of his refusal.  The following dialogue took place:

> THE COURT:  . . . Mr. Snook, I would ask that you talk to your client about the Commonwealth's right of cross examination. . . .  If Mr. Tate refuses cross examination his testimony may be stricken from the record.
>
> *      *      *      *      *      *      *
>
> THE COURT:  First of all, I have to advise you of the fact that by taking the witness stand that you have given up your Fifth Amendment rights against self-incrimination and that the law does require that you answer questions upon cross examination by the Attorney for the Commonwealth.  And I've got to ask you on the record, will you, in fact, submit yourself to cross examination by the Attorney for the Commonwealth?
>
> DEFENDANT:  No.
>
> THE COURT:  All right sir.
>
> If you refuse to do that then as the trial judge I will be duty bound upon motion be the Attorney for the Commonwealth to advise the jury that your testimony that has been given on the stand today would not be properly considered by them as evidence in this case.  I would be required to tell them that they must disregard all elements

of your testimony and that they may not
consider any aspect of your testimony with
regard to any issue that's put before them
for a decision.  Do you understand that?

DEFENDANT:  Yeah.

*      *      *      *      *      *      *

THE COURT:  May I then ask you again, will
you consent to cross examination by the
Attorney for the Commonwealth?

DEFENDANT:  No.

THE COURT:  [to counsel] . . . Would you
please advise him again of the ramifications
of striking his evidence from this trial.
. . . [B]ut I would like at least to afford
you the opportunity to explain that to him
one last time. . . .

*      *      *      *      *      *      *

THE COURT:  All right.

Mr. Tate, may I ask you again,
will you consent to cross examination by the
Attorney for the Commonwealth?

DEFENDANT:  No.

THE COURT:  You will not.

And do you fully understand,
sir, that I . . . will be required to advise
the jury to disregard all testimony that you
have given in this case?

DEFENDANT:  Yes.

Tate persisted in his refusal to submit to

cross-examination and refused to resume the witness stand.  The

trial court denied the Commonwealth's motion for a mistrial and

its motion to find Tate in contempt for violating the rule in

- 4 -

limine.  On its own motion, the trial court struck Tate's testimony, without permitting the parties to state objections and noted the parties' exceptions to its rulings.  It reconvened the trial and instructed the jury to disregard Tate's testimony.

The Commonwealth first argues that by failing to state a specific objection to the trial court's ruling striking his testimony, Tate failed to preserve that issue for appeal.  See Rule 5A:18.  However, by ruling on its own motion and noting counsel's exception without affording counsel the opportunity to specify an objection, the trial court itself satisfied the requirement of Rule 5A:18 and preserved the issue for appeal.  The purpose of Rule 5A:18 is to insure that the trial court is aware of the parties' positions and that it not be led unadvisedly into error.  See Martin v. Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992).  By noting the exception of counsel without affording counsel the opportunity to state their grounds for objection, the trial court acknowledged those grounds and itself satisfied the requirement of the rule.

Tate first contends that he did not, in fact, refuse to submit to cross-examination.  He notes that the Commonwealth's Attorney stated that he "might not need to ask questions" and, in fact, did not ask any questions.  Thus, Tate argues, he refused to answer no questions.  We do not find this argument persuasive.  Code § 19.2-268 states, in relevant part:

> In any case of felony or misdemeanor, the
> accused may be sworn and examined in his own
> behalf, and if so sworn and examined, he
> shall be deemed to have waived his privilege
> of not giving evidence against himself, and
> shall be subject to cross-examination as any
> other witness . . . .

This statute required Tate to resume the witness stand and to submit himself to cross-examination. His dialogue with the trial court during the recess made it plain that he refused to do so. The trial court was not required to go through a fruitless charade simply to demonstrate a situation that had plainly developed. The record is clear that Tate refused to submit to cross-examination by the Commonwealth's Attorney and that he was fully on notice that striking his testimony would be the remedy for his refusal.

"[W]hen the accused voluntarily takes the stand he loses his character as a party, becomes a mere witness, and may be examined as fully as any other witness." Smith v. Commonwealth, 182 Va. 585, 598, 30 S.E.2d 26, 31 (1944) (citation omitted).

> Where a witness, after his testimony in
> chief, refuses completely to submit to
> cross-examination, [the] right of
> confrontation is violated and the witness's
> direct testimony should be stricken. . . .
> Whether the direct testimony should be
> stricken as violative of the confrontation
> clause is within the discretion of the trial
> court . . . .

Nichols v. Commonwealth, 6 Va. App. 426, 430, 369 S.E.2d 218, 220 (1988).

Striking Tate's testimony was a proper remedy under the facts of this case. His refusal to submit to cross-examination frustrated the Commonwealth's ability "to test the credibility of the witness and the truthfulness of his earlier testimony." United States v. Curry, 993 F.2d 43, 45 (4th Cir. 1993) (citation omitted). The trial court warned Tate that his testimony would be stricken, ordered Tate's counsel to advise him of this, and took pains to ensure Tate's understanding of his rights and responsibilities. The trial court did not err in ordering Tate's testimony stricken. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

Elder, J., dissenting.

I concur in the majority's holding that Rule 5A:18 does not bar our consideration of this appeal. However, for the reasons that follow, I would hold that the trial court abused its discretion in striking appellant's testimony following his refusal to submit to cross-examination. Therefore, I respectfully dissent from this portion of the majority opinion.

As the majority discusses, Code § 19.2-268 provides, in relevant part,

> [i]n any case of felony or misdemeanor, the accused may be sworn and examined in his own behalf, and if so sworn and examined, he shall be deemed to have waived his privilege of not giving evidence against himself, and shall be subject to cross-examination as any other witness . . . .

The Virginia Supreme Court has held that an earlier version of this statute "should be liberally construed in favor of the accused, so as to give him the fullest right to testify in his own behalf, and that this right should not be any further impaired than the language of the statute necessarily requires." Enoch v. Commonwealth, 141 Va. 411, 431, 126 S.E. 222, 228 (1925).

Code § 19.2-268, however, is not the only legal rule relevant to the outcome of this appeal. As appellant has argued to this Court, the United States Constitution provides a criminal defendant with the right to testify in his own behalf.

See Rock v. Arkansas, 483 U.S. 44, 51, 107 S. Ct. 2704, 2708, 97 L. Ed. 2d 37 (1987).  "The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution."  Id.  The Fourteenth Amendment's due process provisions "include a right to be heard and to offer testimony."  See id. at 51, 107 S. Ct. at 2709 (citing In re Oliver, 333 U.S. 257, 273, 68 S. Ct. 499, 507, 92 L. Ed. 2d 682 (1948)).  The Sixth Amendment's Compulsory Process Clause, "which grants a defendant the right to call 'witnesses in his favor,'" also provides such a right, for "the most important witness for the defense in many criminal cases is the defendant himself."  Id. at 52, 107 S. Ct. at 2709 (quoting Washington v. Texas, 388 U.S. 14, 17-19, 87 S. Ct. 1920, 1922-23, 18 L. Ed. 2d 1019 (1967)).  Finally, "[t]he opportunity to testify is . . . a necessary corollary to the Fifth Amendment's guarantee against compelled testimony."  Id.  Under the Fifth Amendment, "'an accused is guaranteed the right "to remain silent unless he chooses to speak in the unfettered exercise of his own will." . . . The choice of whether to testify in one's own defense . . . is an exercise of the constitutional privilege.'"  Id. at 53, 107 S. Ct. at 2710 (citations omitted).

The right of a criminal defendant to present relevant testimony, even his own, "is not without limitation.  The right 'may, in appropriate cases, bow to accommodate other legitimate

- 9 -

interests in the criminal trial process.'"  Id. at 55-56, 107

S. Ct. at 2711 (quoting Chambers v. Mississippi, 410 U.S. 284,

295, 93 S. Ct. 1038, 1046, 35 L. Ed. 2d 297 (1973)) (footnote

omitted).  For example, "[t]he Constitution does not give a

defendant a right to testify without subjecting himself to

cross-examination which might tend to incriminate him." See

Williams v. Borg, 139 F.3d 737, 740 (9th Cir. 1998).  Similarly,

a defendant's noncompliance with a state's evidentiary rules may

provide the basis for imposing restrictions on his right to

testify.  See, e.g., Cox v. Wyrick, 873 F.2d 200, 202 (8th Cir.

1989) (upholding exclusion of defendant's testimony on alibi

defense based on finding that defendant "willfully failed to

respond to the State's discovery requests").  Any restrictions

on a defendant's right to testify "may not be arbitrary or

disproportionate to the purposes they are designed to serve.  In

applying its evidentiary rules a State must evaluate whether the

interests served by a rule justify the limitation imposed on the

defendant's constitutional right to testify." Rock, 483 U.S. at

55-56, 107 S. Ct. at 2711.  Under appropriate circumstances, a

trial court properly may strike the testimony of an accused who

refuses to submit to cross-examination.  See, e.g., Williams,

139 F.2d at 740-43 (upholding trial court's striking of

defendant's testimony on prosecutor's motion where defendant

refused, on cross-examination, to answer questions about prior

convictions); see also Nichols v. Commonwealth, 6 Va. App. 426, 430, 369 S.E.2d 218, 220 (1988) (noting that, in determining whether to exclude uncooperative witness' direct testimony as violative of confrontation clause, trial court should consider "factors such as the motive of the witness, the materiality of the answer, and the effectiveness of the cross-examination").

The Third Circuit Court of Appeals has interpreted the Supreme Court's holding in Rock to set out a three-part test for determining whether the right of a criminal defendant to present testimony has been violated. See, e.g., Government of the Virgin Islands v. Mills, 956 F.2d 443, 446 (3d Cir. 1992) (applying test to evaluate exclusion of testimony of defense witness under defendant's Sixth Amendment right to compulsory process). To establish a violation, a defendant must prove "[f]irst, that he was deprived of the opportunity to present evidence in his favor; second, that the excluded testimony would have been material and favorable to his defense; and third, that the deprivation was arbitrary and disproportionate to any legitimate evidentiary or procedural purpose." Id.

Applying this test to the facts of this case, I would hold that the trial court abused its discretion. In striking appellant's direct testimony that he was innocent of the charged offenses and "[had not] killed anybody," the court satisfied the first two prongs of the test--it deprived appellant of the

opportunity to present evidence that, if believed, would have been material and favorable to the defense. I also would hold that the trial court's action was arbitrary and disproportionate to any legitimate evidentiary or procedural purpose, thereby satisfying the third prong of the test.

The trial court struck appellant's testimony because appellant refused to submit to cross-examination. Under appropriate circumstances, such a refusal could satisfy the test. See, e.g., Williams, 139 F.2d at 740-43; see also Nichols, 6 Va. App. at 430, 369 S.E.2d at 220. Here, however, appellant testified about his prior convictions on direct examination, and the Commonwealth's Attorney stated specifically that "there might not be anything I need to ask [appellant]." The record contains no indication that the Commonwealth's Attorney subsequently expressed a desire to cross-examine appellant and, therefore, no indication of what testimony any such cross-examination, if it had been sought, would have been designed to elicit. Had the Commonwealth's Attorney thereafter moved to strike appellant's testimony based on appellant's continuing refusal to submit to cross-examination, such a motion could have provided the inference that the Commonwealth's Attorney did, in fact, desire to cross-examine appellant. Here, however, the Commonwealth's Attorney made no such motion, and the trial court struck appellant's testimony sua sponte.

- 12 -

Therefore, given the absence of evidence that the Commonwealth desired to cross-examine appellant and the absence of evidence that any such examination would have sought to elicit material testimony, I would hold that the trial court's action in restricting appellant's right to testify was arbitrary and constituted an abuse of discretion.

For these reasons, I respectfully dissent from the majority's affirmance of appellant's convictions.